UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| DWIGHT J. DAVENPORT, | : | Case No. 3:12-cv-44 |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | |
| COMMISSIONER OF | : | |
| SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | : | |

**ORDER THAT: (1) THE ALJ'S NON-DISABILITY FINDING IS FOUND SUPPORTED BY SUBSTANTIAL EVIDENCE, AND AFFIRMED; AND (2) THIS CASE IS CLOSED**

This is a Social Security disability benefits appeal. At issue is whether the administrative law judge ("ALJ") erred in finding the Plaintiff "not disabled" and therefore unentitled to disability insurance benefits ("DIB") and supplemental security income ("SSI"). (*See* Administrative Transcript ("Tr.") (Tr. 9-21) (ALJ's decision)).

**I.**

Plaintiff filed for DIB and SSI on September 2, 2008, alleging disability beginning August 28, 2008, due to Hepatitis C, back pain, right hip pain, right knee pain, left sided rib pain, and depression. (Tr. 70, 119-23). Plaintiff suffered a work-related injury on August 24, 2008.[1] (*Id*.) After Plaintiff's applications were denied initially and upon reconsideration, he requested a hearing before an ALJ. (Tr. 66-69, 83-84). Plaintiff testified with counsel at a hearing and a vocational expert also testified. (Tr. 9-21, 30-

---

[1] Plaintiff was injured while working as a welder making air tanks. He had been lifting parts while on a ramp. (Tr. 234).

60). The ALJ denied Plaintiff's applications and the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1). Plaintiff seeks judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3).

Plaintiff was 52 years old upon application, but is now 56 years old. Plaintiff has a high school education. (Tr. 19). Plaintiff identified prior work as: (1) a welder (from June 2008-August 2008); (2) a fork lift driver (from January 2008-March 2008); (3) a grinder (from March 2008-unspecified end date); (4) a janitor (from February 2007-June 2007); (5) a machine operator (for one month in Summer 2007); (6) a water leak tester (from August 2005-August 2006); (7) a factory cleaner (for three weeks at an unspecified time); (8) a headlight maker (unspecified time during 2004); and (9) a fork lift operator and flour and grain bagger (unspecified time during 2004). (Tr. 158). Plaintiff also indicated that he had performed work as a temporary service laborer from 1993-2004. (Tr. 149). Plaintiff did not identify any jobs between: (1) summer 2007 and January 2008; (2) August 2006 and February 2007; and (3) the end of his work in 2004 and August 2005. (Tr. 149, 158).

The ALJ's "Findings," which represent the rationale of her decision, were as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

2. The claimant has not engaged in substantial gainful activity since August 28, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: bursitis of the right hip; hepatitis C; and arthralgias (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except that he can never climb ladders, ropes, or scaffolds. He can climb ramps or stairs no more than occasionally, and he can only frequently stoop, kneel, crouch, and crawl.

6. The claimant is capable of performing past relevant work as a welder and water leak tester. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant was born on March 10, 1956 and was 52 years old, which is defined as an individual closely approaching advances age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

  11. The claimant has not been under a disability, as defined in the Social Security Act, from August 28, 2008, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 11-21).

In sum, the ALJ concluded that Plaintiff was not under a disability as defined by the Social Security Regulations and was therefore not entitled to DIB or SSI.  (Tr. 21).

On appeal, Plaintiff argues that: (1) the ALJ erred in not finding any evidence of a severe psychological impairment; (2) the ALJ erred in finding that Plaintiff could perform the exertional demands of medium work; (3) the ALJ erred in finding that Plaintiff could return to his past relevant work as a welder and water leak tester; and (4) the ALJ improperly assessed Plaintiff's credibility.  The Court will address each argument in turn.

## II.

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales,* 402 U.S. 389, 401 (1971).  In performing this review, the Court considers the record as a whole.  *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978).  If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled.  As the Sixth Circuit has explained:

> "The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm."

*Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

The claimant bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. § 404.1512(a). That is, he must present sufficient evidence to show that, during the relevant time period, he suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

### A.

The record reflects that:

**1. Medical Evidence**

*2008*

On August 28, 2008, Plaintiff went to the emergency room complaining of hip pain from a work injury. (Tr. 213, 215-17). The attending physician diagnosed right hip bursitis and found that Plaintiff's neck and back were normal following an inspection. (Tr. 213). X-rays were consistent with right hip bursitis, but also showed that Plaintiff's right hip and knee joints were otherwise normal and showed no acute osseous

abnormalities. (Tr. 221-22). Plaintiff was discharged in improved condition and given Vicodin. (Tr. 213). A work release form from the emergency room indicated that Plaintiff would need to be off work on August 28 and 29, 2008. (Tr. 224).

The next week, Plaintiff filed an application for disability and completed a report for the Ohio Bureau of Workers' Compensation ("BWC") on September 4. (Tr. 119-23, 223). He had been fired by his employer. (Tr. 223). The next day, September 5, Plaintiff returned to the emergency room complaining of hip pain and requesting more pain medication. (Tr. 231-33). The attending physician noted that Plaintiff had not followed through with occupational health treatment, that Plaintiff exhibited only mild distress, and that Plaintiff had refused intramuscular medications. (Tr. 232-33). Plaintiff reported drinking two beers per day and smoking a pack of cigarettes per day. (Tr. 232). The attending physician noted no abnormalities with Plaintiff's abdomen, back, or psychological state, and diagnosed a right hip sprain. (Tr. 233).

Three days later, on September 8, Dr. Sana Waikhorn, examined Plaintiff on behalf of the BWC. (Tr. 234-35). Plaintiff told Dr. Waikhorn that his pain started a week earlier when he was lifting objects at work. (Tr. 234). Dr. Waikhorn noted that Plaintiff was limping and favoring his leg. (*Id.*) While Dr. Waikhorn indicated that there was mild tenderness on Plaintiff's right side, Dr. Waikhorn also noted that Plaintiff was able to fully extend his knee, and that there was no sign of muscle spasm. (*Id.*) Dr. Waikhorn diagnosed an acute lumbosacral sprain and an acute right thigh strain, and recommended that Plaintiff continue his medications and undergo physical therapy two to three times

per week for four to five weeks. (Tr. 234, 237). Dr. Waikhorn indicated that Plaintiff could return to work immediately, and his only restriction was occasional (up to 33% of the workday) standing or walking. (Tr. 235). The BWC conditionally approved Dr. Waikhorn's recommendation for physical therapy on September 11, 2008, to take place between September 9, 2008 and October 14, 2008. (Tr. 237). There is no record of any physical therapy around that time, and Plaintiff failed to appear for an occupational health appointment on September 12, 2008. (Tr. 238).

A DDS report from September 19, 2008 notes that Plaintiff was complaining of back pain and was extremely fatigued. (Tr. 173). The report notes that Plaintiff seemed down in his mood because he was not able to see his doctor or obtain his prescription medications to take care of his Hepatitis C. (*Id*.)

Consultative physician, Dr. William D. Padamadan, evaluated Plaintiff on October 23, 2008, one and a half months after Dr. Waikhorn's examination. (Tr. 240-46). Dr. Padamadan noted that Plaintiff had been diagnosed with hepatitis C three years prior, but had never had any treatment or liver biopsies. (Tr. 240). Plaintiff's squat test and the stability of Plaintiff's knee joint were both normal. (Tr. 240, 242). Plaintiff reported drinking two beers per day and smoking one and a half packs of cigarettes per day. (Tr. 241). He reported no chronic diarrheas or constipation, and weighed 154 pounds. (*Id.*) Dr. Padamadan observed that Plaintiff walked without ambulatory aids, a cane, or limping, and had no clinical signs of distress except for moaning and groaning when

tested for lower back pain. (*Id.*)  Plaintiff had an excellent range of motion throughout his arms, except for a reduced finger grip strength. (*Id.*)  Plaintiff's reduced finger grip strength was not accompanied by any clinically demonstrable abnormal findings, and was compatible with Waddell's signs. (*Id.*)  As such, Dr. Padamadan found that Plaintiff's testing was "not reliable."  (Tr. 243).  A FABER test[2] was normal for Plaintiff's right hip complaints.  (Tr. 242).  Plaintiff's forward bend was excellent, and his complaints of back pain were also compatible with Waddell's signs.  (*Id.*)  A neurological exam revealed normal motor function, normal sensory function of the arms, legs, chest, and abdomen, and normal reflexes and coordination.  (*Id.*)  Dr. Padamadan diagnosed Plaintiff with (1) hepatitis C without peripheral stigmata of liver disease; (2) lower back pain without objective findings of functional impairment and with positive Waddell's signs; (3) right knee pain without any clinical findings; (4) right hip pain with normal FABER test; and (5) left-sided rib pain without any clinically demonstrable abnormal findings.  (*Id.*)  Dr. Padamadan opined that Plaintiff was able to sit, stand, and walk, and found no cause for limiting Plaintiff's physical activities.  (*Id.*)

Based on Dr. Padamadan's report, the state agency found that Plaintiff's physical impairments were "not severe."  (Tr. 175).  Plaintiff previously had indicated in a September 2008 symptoms report that his physical symptoms made him "get depressed."  (Tr. 169).  In November 2008, Plaintiff clarified that he was referring to his emotional

---

[2] A FABER test (for Flexion, Abduction, and External Rotation) is performed to evaluate pathology of the hip joint.

struggle due to his finances and physical limitations. (Tr. 174). Plaintiff denied any symptoms of depression, seeking treatment, being unable to work due to psychological symptoms, and having any functional limitations due to his emotional condition. (*Id.*) He also indicated that no medical sources had suggested any psychological evaluation or treatment, and denied any alcohol or drug use. (*Id.*) As such, the state agency found that additional psychological development was not warranted. (*Id.*) Chest imaging on November 14, 2008 revealed multilevel degenerative changes of the thoracic spine, and a CT scan of Plaintiff's abdomen revealed osseous degeneration and bilateral L5 pars defects but no acute abnormalities. (Tr. 254-55, 265, 267). There were no findings to explain any abdominal pain. (Tr. 255, 267).

**2009**

Plaintiff completed a function report on January 7, 2009. (Tr. 189-96). He indicated that he felt depressed often, and reported difficulties understanding, following instructions, getting along with others, remembering things, completing tasks, and concentrating. (Tr. 190, 194). However, Plaintiff also indicated that he followed spoken instructions well and got along with authority figures. (Tr. 194). On January 20, 2009, Plaintiff denied undergoing any psychological treatment to the state agency. (Tr. 197). On February 7, 2009, W. Jerry McCloud, M.D., reviewed the record on behalf of the state agency and opined that Plaintiff had no medically-determinable severe physical impairment. (Tr. 268).

Over seven months later, on September 24, 2009, Plaintiff was seen for an initial physical therapy evaluation. (Tr. 286-87). Although Plaintiff complained of low back and right knee pain, there was no mention of any hip pain. (Tr. 286). The physical therapist indicated that Plaintiff's potential for rehabilitation was good, and recommended that he undergo therapy one to two times per week (up to a total of eight sessions) by November 24, 2009. (Tr. 287). Plaintiff attended a physical therapy session on September 29, 2009, but failed to appear for any other scheduled session. (Tr. 289-91).

**2010**

Five months later, in February 2010, Plaintiff went to the emergency room with complaints of sciatica and frequent urination. (Tr. 281). The medical record from that visit indicated that Plaintiff's Hepatitis C had been untreated. (*Id*.) Three months later, and just a few weeks prior to his hearing before the ALJ, Plaintiff appeared at the Rocking Horse Community Health Center ("Rocking Horse") on May 11, 2010, complaining of depression and anxiety since 2006 and lower back pain since a work injury in August 2008. (Tr. 300-01). Plaintiff's weight was 151 pounds. (Tr. 301). Plaintiff reported drinking "a six pack or so daily" and crying "a lot." (*Id*.) The personnel at Rocking Horse indicated that Plaintiff had minimal patellar agitation and tenderness in his right lower back and his right hip. (*Id*.) They found that Plaintiff had depression, a mild generalized anxiety disorder, questionable muscular lower back pain, alcoholism, and chronic Hepatitis C. (*Id*.)

    **2.**       **ALJ Hearing Testimony**

    *Plaintiff*

At the ALJ hearing on June 1, 2010, Plaintiff testified that he had recently lost ten pounds because he did not "eat like [he] should." (Tr. 35). He testified that his memory was impaired, that he was often tired, and that he sometimes cried. (Tr. 37, 52-53). He stated that during the day he basically does nothing and that he often is very depressed and feels like he is going crazy. (Tr. 41). He further elaborated that there are days when he will not get up and he does not do anything. (Tr. 42). He testified that he has sleep issues at night and often takes a routine nap during the day. (Tr. 43). He stated that due to chronic pain he often goes nowhere and sometimes will stay in his house for a week at a time. (Tr. 51). Plaintiff noted that he was taking medication for depression, and reported that he used a cane because he had arthritis in both legs, his hip, and his lower back. (Tr. 38-39, 40-41). Plaintiff had difficulty getting up after sitting for 15 or 20 minutes, and could stand for up to 15 minutes. (Tr. 40). Plaintiff indicated that his right leg "went out" on him at least once or twice per week. (Tr. 50-51). Plaintiff also indicated that he has constant diarrhea and has to urinate frequently with an immediate need and often goes to the restroom up to eight times a day. (Tr. 48).

    *Vocational Expert*

The Vocational Expert ("VE"), Mark Pinti, testified that Plaintiff's prior work as a welder was medium and skilled, and that his work as a water leak tester position was light and semi-skilled. (Tr. 56). The VE considered a hypothetical worker of the Plaintiff's

age, education, and work background, with the capacity to perform medium exertional work, and with the following additional restrictions: no climbing ladder, ropes, or scaffolds; occasional climbing of ramps or stairs; and frequent stooping, kneeling, crouching, and crawling. (*Id*.) The VE testified that such an individual would be able to perform Plaintiff's past work because the work involved medium and light jobs. (*Id.*) The VE testified that the hypothetical worker would not be able to perform Plaintiff's past work if he needed to be able to alternate between sitting and standing at 15 minute intervals, but that such a hypothetical worker would be able to perform at least light work. (Tr. 56-57). The VE testified that light work would be ruled out if the hypothetical worker needed to use a cane. (Tr. 57). Returning to the ALJ's original hypothetical, the VE testified that an individual with those limitations would be able to perform 25,000 jobs that existed in the regional economy at the medium exertional level, such as a warehouse worker (4,000 jobs in the regional economy) or a packager (3,000 jobs in the regional economy). (Tr. 58-59).

**B.**

First, Plaintiff claims that the ALJ erred in finding that there is no evidence of a severe psychological impairment.

An impairment or combination of impairments is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 404.1521(a). The ALJ found that Plaintiff exhibited only mild impairment in "activities of daily living; social functioning; concentration" and no

extended episodes of decompensation. (Tr. 12-13). There was no objective evidence that Plaintiff's alleged mental impairments were severe and no medical opinions suggested any work-related limitations resulting from those alleged impairments. The record evidence supports the ALJ's determination. For example, while Plaintiff referred to depression in the September 2008 symptoms report, he later clarified to the state agency that his depression simply referred to his emotional struggle due to his finances and physical limitations. (Tr. 13, 169). Plaintiff denied any functional limitations resulting from the depression and stated that no medical sources had even suggested any psychological evaluation or treatment. (Tr. 174). The ALJ also noted that Plaintiff denied seeking any psychological treatment in January 2009. (Tr. 13, 197). Additionally, the personnel at Rocking Horse diagnosed Plaintiff with only a "mild" generalized anxiety disorder when Plaintiff complained of depression and anxiety. (Tr. 13, 301). Notably Plaintiff was able to perform work despite his alleged depression which began in 2006. (Tr. 158, 200).

  This Court agrees that failure to seek mental health treatment is not necessarily a basis upon which to discredit the Plaintiff. *See, e.g., Burton v. Apfel*, 208 F.3d 212 (table) (6th Cir. 2000) ("a Claimant's failure to seek formal mental health treatment is 'hardly probative' of whether the Claimant suffers from a mental impairment. . . [and] should not be a determinative factor in the credibility assessment relating to the existence of a mental impairment."). However, the ALJ's decision reflects that the ALJ did not treat Plaintiff's failure to seek treatment as a "determinative factor," but considered it along with the

other evidence relating to Plaintiff's allegations in finding that Plaintiff had no severe mental impairments. (Tr. 13).

Finally, the ALJ did not abuse her discretion by not gathering more evidence or ordering a consultative exam regarding Plaintiff's mental condition. The Social Security regulations grant the ALJ the authority to order a consultative examination if a claimant's medical sources cannot give sufficient information about a claimant's impairments to enable the ALJ to determine whether the claimant is disabled. 20 C.F.R. § 404.1517. However, "the regulations do not require an ALJ to refer a claimant to a consultative specialist." *Landsaw v. Sec'y of Health & Human Services*, 803 F.2d 211, 214 (6th Cir. 1986). Even where the record contains evidence of a mental impairment, the Sixth Circuit has declined to impose a duty upon an ALJ to consult a mental health expert. *Boulis-Gashe v. Comm'r of Soc. Sec.*, 451 F. App'x 488, 494-95 (6th Cir. 2011). Rather, "[a]n ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary." *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001). Plaintiff's own statements about his alleged mental impairments, the lack of support from physicians, and the fact that Plaintiff had engaged in work after the alleged onset of his mental impairments sufficiently enabled the ALJ to evaluate the severity of his mental limitations.

Accordingly, the ALJ's alleged depression was not a severe impairment is supported by substantial evidence. Therefore, Plaintiff's first argument lacks merit.

## C.

Next, Plaintiff argues that the ALJ erred in finding that he could perform the exertional demands of medium work.[3]

No physician found that Plaintiff was disabled or more limited than set forth in the ALJ's RFC. (Tr. 18). A claimant must be unable to work for 12 continuous months in order to satisfy the statutory definition of "disability," 42 U.S.C. § 423(d)(1)(A), (2)(A), and the ALJ correctly noted that the work restrictions from Drs. Branch and Waikhorn immediately following Plaintiff's work-related injury were, at best, only temporary recommendations. (Tr. 18-19).

Plaintiff identifies the following evidence: (1) Dr. Waikhorn's observation that Plaintiff was limping at the time of Dr. Waikhorn's examination, just two weeks after Plaintiff's job injury (Tr. 234);[4] (2) the November 2008 CT Scan that showed degenerative changes in his thoracic spine (Tr. 254, 265); and (3) his own subjective complaints of pain and mental difficulties. (Doc. 9 at 9-13).

The ALJ cited: (1) the August 2008 x-ray which revealed right hip bursitis but no other abnormalities (Tr. 15, 221-22); (2) the medical reports from Plaintiff's 2008 emergency room visits, which revealed no abnormalities in his neck and back and

---

[3] Medium work is defined by 20 CFR § 416.967, involves occasional lifting 50 pounds at a time, and frequent lifting or carrying of objects weighing up to 25 pounds. Medium work can require standing and walking as much as six hours during any given eight-hour work day. It may also involve frequent stooping, grasping, holding, and turning objects. *Id.*

[4] Dr. Waikhorn suggested a stand/walk limitation (Tr. 235) and the ALJ reasonably interpreted this as a temporary restriction. (Tr. 18).

indicated that he exhibited only mild distress and refused medication (Tr. 15-16, 213, 232-33); (3) Plaintiff's failure to undergo physical therapy until over a year after Dr. Waikhorn's recommendation, and his failure to complete that therapy (Tr. 15-17, 234, 286-87, 289-91); (4) Dr. Padamadan's evaluation which revealed that Plaintiff was able to walk without ambulatory aids or limping, that Plaintiff's complaints of pain were compatible with Waddell's signs, that Plaintiff had no difficulties resulting from his hepatitis C, and that Plaintiff had no functional impairments (Tr. 16-18, 240-42); (5) the Rocking Horse examination, which revealed only right hip and lumbar tenderness with no neurological or gait abnormalities, minimal patellar agitation, and questionable muscular lower back pain (Tr. 16, 301); (6) the CT scan of Plaintiff's abdomen, which showed no acute abnormalities or findings to explain any abdominal pain (Tr. 16-17); (7) the fact that Plaintiff exhibited no weight loss between Dr. Padamadan's October 2008 exam and the May 2010 exam at Rocking Horse (Tr. 17, 241, 301); (8) the fact that Plaintiff never sought treatment for his hepatitis C (Tr. 17, 240, 281); and (9) Plaintiff's inconsistent use of a cane and inconsistent statements regarding his alcohol consumption (Tr. 17-18, 39, 174, 232, 241, 301).

    The ALJ gave Plaintiff's subjective complaints some benefit in limiting him to medium work, but found that his allegations of disabling limitations were not credible.

    On whole there is substantial evidence supporting the ALJ's finding that Plaintiff could perform the exertional demands of medium work

**D.**

Plaintiff maintains that the ALJ erred in finding that he can return to his past relevant work as a welder and water leak tester.

The Court finds that the ALJ's hypothetical question accurately incorporated Plaintiff's RFC as found by the ALJ, so the ALJ was entitled to rely on the vocational expert's testimony that Plaintiff retained the RFC to return to his past relevant work. (Tr. 19, 56). *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) (holding that the ALJ was responsible for determining Plaintiff's RFC, then framing hypothetical questions to the vocational expert incorporating only the RFC). Therefore, Plaintiff has not shown that the ALJ committed any error in determining that he retained the ability to return to his past relevant work.[5]

**E.**

Finally, Plaintiff claims that the ALJ erred in assessing his credibility.

The Sixth Circuit accords great deference to an ALJ's credibility assessment, particularly because the ALJ has the opportunity to observe the demeanor of a witness while testifying. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). It is

---

[5] Plaintiff's contentions regarding the Medical-Vocational Guidelines ("grids") are also unavailing. Plaintiff was 54 years old at the time of the ALJ's decision, which would place him in the "[c]losely approaching advanced age" category, and Plaintiff had a high school education. (Tr. 21, 36, 143). Under the grids, even if Plaintiff were restricted to light work, an individual of Plaintiff's age and education and with past skilled or semiskilled work is not disabled. 20 C.F.R. pt. 404, subpt. P, app. 2, tbl. 2. Moreover, even if Plaintiff were limited to sedentary work, under the grids he would not be disabled if his skills were transferrable. 20 C.F.R. pt. 404, subpt. P., app. 2, tbl. 1.

not the province of reviewing courts to decide questions of credibility. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).

The regulations state that an ALJ will consider a claimant's statements about the intensity, persistence, and limiting effects of his symptoms in relation to the objective medical evidence and other evidence, including the claimant's history, the signs and laboratory findings, and statements from medical sources about how the claimant's symptoms affect the claimant. 20 C.F.R. § 404.1529(c)(4). The ALJ noted, however, that no medical source supported Plaintiff's claims of disability. (Tr. 18). The ALJ noted that Dr. Padamadan observed that Plaintiff's allegations of pain were consistent with Waddell's signs. (Tr. 16, 241-42). Contrary to Plaintiff's assertion that consultative examiner Dr. Padamadan prescribed a cane, the ALJ accurately noted that despite Plaintiff's allegations regarding his use of a cane, Dr. Padamadan reported that Plaintiff had attended his examination without a cane or other ambulatory aid and had walked without limping. (Tr. 17, 241). Dr. Padamadan indicated that there were no objective clinical findings of any impairment and Plaintiff was able to stand and walk, and there was no cause for limiting his physical activities. (Tr. 18, 242). While Plaintiff asserts that "numerous physicians" indicated that he had to rely on a cane, he does not identify a single such physician nor was there any record support for this claim.

Given the inconsistencies between Plaintiff's allegations and the record medical evidence, Plaintiff's contention that substantial evidence did not support the ALJ's credibility assessment is unavailing.

Plaintiff argues that the ALJ's credibility determination was erroneous because the ALJ did not give great weight to Plaintiff's alleged "excellent" work history. (Doc. 9 at 13-14). However, Plaintiff neglects to mention the numerous gaps in Plaintiff's work history including between: (1) Summer 2007 and January 2008; (2) August 2006 and February 2007; and (3) 2004 and August 2005. (Tr. 149, 158). Plaintiff's earnings report shows work fluctuations and entire years with no reported earnings. (Tr. 128).

The issue is not whether the record could support a finding of disability, but rather whether the ALJ's decision is supported by substantial evidence. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Substantial evidence supports the ALJ's finding that Plaintiff was not disabled.

### III.

For the foregoing reasons, Plaintiff's assignments of error are unavailing. The ALJ's decision is supported by substantial evidence and is affirmed.

**IT IS THEREFORE ORDERED THAT** the decision of the Commissioner, that Dwight J. Davenport was not entitled to disability insurance benefits and supplemental security income, is found **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**; and, as no further matters remain pending for the Court's review, this case is **CLOSED.**

Date: 12/31/12              *s/ Timothy S. Black*
                            Timothy S. Black
                            United States District Judge